UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>24-CR-20390-WILLIAMS</u>

UNITED STATES OF AMERICA,

v.

JOHN CHRISTOPHER POLIT,

    Defendant.
_____/

## FACTUAL PROFFER

    The United States of America (the "United States") and JOHN CHRISTOPHER POLIT (the "defendant"), stipulate and agree that the facts set forth herein are true and accurate and form a sufficient basis for the defendant's plea of guilty to the money laundering conspiracy in violation of Title 18, United States Code, Section 1956(h), specifically, conspiring to knowingly engage in a monetary transaction, affecting interstate commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000 derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957. The specified unlawful activity was an offense against a foreign nation, specifically Ecuador, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, as provided by Title 18, United States Code, Section 1956(c)(7)(B)(iv). The defendant also stipulates and agrees that the facts set forth herein form a sufficient basis for the forfeiture money judgment amount of $16,510,000.

    Had this matter proceeded to trial, the defendant stipulates and agrees that the government would have proven the facts alleged below beyond a reasonable doubt and the forfeiture allegations set forth in the Indictment by a preponderance of the evidence.

1

## Background

The defendant was a United States citizen residing in the Southern District of Florida and was the son of Carlos Ramón Polit Faggioni ("Carlos Polit"). The defendant controlled several companies incorporated in Florida with bank accounts in the Southern District of Florida, including Florida Company 1.

Carlos Polit was a citizen of Ecuador, the United States, and Italy, and served as the Comptroller General of Ecuador from in or around 2007 to 2017. Ecuador created the office of comptroller to prevent fraud and corruption relating to the use of Ecuador's public funds. In that role, Carlos Polit had the power to initiate investigations, to impose fines, and to prepare reports relating to the misuse of public funds, including recommending prosecutions.

Intermediary Companies 1, 2, and 3 (together, the "Intermediary Companies") maintained bank accounts in Panama.

Odebrecht S.A. was a Brazilian holding company that, through its subsidiaries and companies in which it was a majority shareholder (collectively "Odebrecht"), conducted business in multiple industries, including engineering, construction, infrastructure, energy, chemicals, utilities, and real estate. Odebrecht had its headquarters in Salvador, state of Bahia, Brazil, and operated in at least 27 other countries, including Ecuador.

Co-Conspirator 1, an individual whose identity is known to the Grand Jury, was a senior manager at Odebrecht from approximately 2010 to 2016, whose regional responsibility included Ecuador.

Seguros Sucre S.A. and Rocaforte Seguros S.A. (together, "Seguros Sucre") were state-owned insurance companies of Ecuador controlled by the government of Ecuador.

Juan Ribas Domenich ("Juan Ribas") was the Chairman of Seguros Sucre.

2

Co-Conspirator 2, an individual whose identity is known to the Grand Jury, was an Ecuadorian businessperson who was an insurance broker on certain contracts with Seguros Sucre.

### The Odebrecht Bribery Scheme

Beginning in or around 2010, and continuing until at least December 2018, the defendant laundered the proceeds of bribes that Carlos Polit solicited and received from Odebrecht in exchange for using Carlos Polit's official position and influence as comptroller of Ecuador to remove and prevent the imposition of large fines on Odebrecht by the comptroller's office relating to Odebrecht's construction projects in Ecuador.

Specifically, from 2010 to 2014, Co-Conspirator 1 caused Odebrecht to pay approximately $11.9 million in cash bribes to Carlos Polit to influence official actions by Ecuador's comptroller office to benefit Odebrecht and its business in Ecuador. The defendant laundered some of these bribes by receiving proceeds from these cash bribes and laundering those funds into South Florida. For example, in or around 2013 and 2014, Carlos Polit provided cash to Co-Conspirator 2 in Ecuador. The defendant subsequently directed Co-Conspirator 2 to wire transfer approximately $398,000 to accounts in South Florida controlled by the defendant.

In or around 2014, Co-Conspirator 1 caused Odebrecht to pay approximately $4.1 million in wire transfer bribes to Carlos Polit to influence official actions by Ecuador's comptroller office to benefit Odebrecht and its business in Europe. The defendant laundered these funds by causing the Odebrecht bribes to be sent to accounts in Panama and then transferred to accounts in South Florida. Specifically, the defendant provided bank accounts of the Intermediary Companies in Panama to Carlos Polit, who subsequently provided those bank accounts to Odebrecht. Odebrecht paid approximately $4.1 million in bribes for Carlos Polit via wire transfers to the Intermediary Companies in Panama. These international wire transfers cleared through U.S. correspondent

banks. Afterwards, at the direction of the defendant, the Intermediary Companies transferred these funds to the account of Florida Company 1 in South Florida controlled by the defendant. For example, on March 22, 2016, Intermediary Company 3 transferred approximately $3.4 million to an account of Florida Company 1 in South Florida. Similarly, on or about October 7, 2016, Intermediate Company 1 transferred approximately $34,300 to an account of Florida Company 1 in the Southern District of Florida.

### The Seguro Sucre Bribery Scheme

In or around 2015, the defendant laundered the proceeds of bribes that Carlos Polit solicited and received from Co-Conspirator 2 in exchange for Carlos Polit using his official position to influence the award of contracts from Seguro Sucre to Co-Conspirator 2. Specifically, in or around 2015, Carlos Polit used his official position to cause Juan Ribas (then head of Seguros Sucre) to award to Seguros Sucre contracts in a manner that benefitted Co-Conspirator 2's company. Afterwards, Carlos Polit directed Co-Conspirator 2 to coordinate with the defendant on the payment of bribery funds for Carlos Polit's benefit. In or around December 2015, the defendant directed Co-Conspirator 2 to make a transfer of approximately $510,000 to an account in South Florida controlled by the defendant. After the transfer was made, the defendant caused a false and fraudulent invoice to be issued to Co-Conspirator 2 relating to the bribe payment.

### The Money Laundering

The defendant caused funds from the Odebrecht and Seguro Sucre bribery schemes to be laundered into bank accounts in the Southern District of Florida and used for investments, primarily in real estate, knowing or being willfully blind to the fact that the funds came from bribery. For example, in May 2016, the defendant caused funds from the Odebrecht bribery scheme to be used to purchase an office building in Coral Gables for $2.6 million in the name of

a company controlled by the defendant. Similarly, the defendant used funds from the Odebrecht and Seguro Sucre bribery schemes to upgrade a residential property in Coral Gables held in the name of a company controlled by the defendant. This residence was sold for an approximately $1.4 million profit in 2017. In April 2017, the defendant caused a transfer of approximately $3.6 million (the proceeds from the sale of the property) to an account in South Florida controlled by the defendant.

In total, the defendant laundered approximately $16,510,000 in proceeds from Carlos Polit's bribery scheme into various investments, including real estate and other businesses, in South Florida and elsewhere. The defendant knew or was willfully blind that these funds came from Carlos Polit's bribery schemes.

[Intentionally Left Blank]

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for the defendant's guilty plea to the charge against him. It does not include all the facts known to the defendant or the United States concerning criminal activity in which the defendant and others engaged. The defendant makes this statement knowingly and voluntarily and because he is in fact guilty of the crime charged.

| | |
|---|---|
| GLENN S. LEON<br>CHIEF, FRAUD SECTION<br>U.S. DEPARTMENT OF JUSTICE<br><br>_____<br>JIL SIMON<br>TRIAL ATTORNEY<br>ALEXANDER KRAMER<br>ASSISTANT CHIEF<br><br>Date: 11/7/24<br><br>Date: 11/7/24<br><br>Date: 11/7/24 | MARKENZY LAPOINTE<br>UNITED STATES ATTORNEY<br><br>_____<br>MICHAEL N. BERGER<br>SENIOR LITIGATION COUNSEL<br><br>Date: 11-7-2024<br><br>_____<br>REINALDO J. DORTA, JR.<br>ATTORNEY FOR DEFENDANT<br><br>_____<br>JOHN CHRISTOPHER POLIT<br>DEFENDANT |