**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 24-20390-CR-WILLIAMS**

**UNITED STATES OF AMERICA,**

vs.

**JOHN CHRISTOPHER POLIT,**
  *Defendant.*
_____/

### DEFENDANT JOHN CHRISTOPHER POLIT'S MOTION FOR DOWNWARD VARIANCE FROM THE ADVISORY SENTENCING GUIDELINES WITH INCORPORATED MEMORANDUM OF LAW

  The Defendant, JOHN CHRISTOPHER POLIT, (hereinafter John or Mr. Polit) by and through undersigned counsel, and pursuant to Rule 32 of the Federal Rules of Criminal Procedure and 18 U.S.C § 3553(a), respectfully requests that this Honorable Court consider the following in granting a downward variance and sentence him below the Advisory Sentencing Guidelines to a maximum period of twenty eight (28) months of incarceration. Mr. Polit has been debriefed by the Government cooperating and aiding in the prosecution of other potential Defendants. Through John's continued assistance, he was hopeful that the government would move this Court to depart from the sentencing guidelines based on his cooperation by filing 5K1.1 or a Rule 35(b) motion for reduction. While the government will not be filing either a 5K1.1 or a Rule 35(b) motion, Mr. Polit's efforts to cooperate should nevertheless be taken into account by the Court. Further, at the time of sentencing, Mr. Polit would have paid the entire amount of restitution, $16,510,000.00. This included selling numerous assets that predated any of the allegations in this case.

Mr. Polit appears before this Court to be sentenced. Unquestionably, the most solemn duty of any judge presiding in criminal court is the responsibility, or some would say burden, of determining a legal and just sentence for a person who has committed a crime. Mr. Polit's expeditious plea of guilty after having been formally charged, his acceptance of responsibility, and his role in the charged conspiracy, are important factors that should play a significant role in determining his sentence. However, it is incumbent on Mr. Polit and undersigned counsel, to provide as much additional information to this Court concerning him as an individual, his background, his profound shame, and what led to his involvement with this crime, in order to individualize him and put him and his crime in the proper perspective so that the Court may make an informed decision regarding his sentence.

This request for a variance complies with the sentencing procedures that have developed both since the United States Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005) and *Gall v. United States*, 552 U.S. 38 (2007) as well as those adopted by the Eleventh Circuit of Appeals in *United States v. Livesay*, 525 F.3d 1081, 1089-90 (11th Cir. 2008) and *United States v. Pugh*, 515 F.3d 1179, 1188-91 (11th Cir. 2008). In particular, the holdings in *Gall* and its companion case, *Kimbrough v. United States*, 552 U.S. 85 (2007), provide that where warranted and justified by the circumstances, the courts can impose sentences that substantially vary downward from the advisory guideline range utilizing the statutory factors of 18 U.S.C § 3553(a). The Eleventh Circuit has repeatedly affirmed the decisions of the district courts to grant motions for downward variances. Illustrative cases are: *United States v, Clay*, 483 F.3d 739 (11th Cir, 2007) (affirming a sentence of 60 months even though the guidelines were 188-235

months); *United States v. Gray*, 453 F.3d 1323 (11th Cir. 2006) (affirming a sentence of 72 months even though it was less than half of the guideline range which was 151 to 188 months); and *United States v. Williams*, 435 F.3d 1350 (11th Cir. 2006 (affirming a sentence of 90 months even though the advisory guidelines ranged from 188-235 months).

In Title 18 U.S.C. § 3553(a), Congress mandated that the courts "impose a sentence sufficient, but not greater than necessary to comply with "federal sentencing goals. *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007). The § 3553(a) factors that a district court must consider include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. §3553(a)(1)-(7).

When applying these factors to a particular sentence, "[t]he weight to be accorded any given any § 3553(a) factor is a matter committed to the sound discretion of the district court [,]" and we "will not substitute our judgment in weighing the relevant factors because 'our review is not de novo.'" *United States v. Williams*, 456 F.3d 1353, 1363 (11th Cir.2006) (citation and alteration omitted), cert. dismissed, 127 S.Ct. 3040, (2007), abrogated on other grounds, *Kimbrough v. United States*,552 U.S.85, 128 S.Ct. 558, 169 L.Ed. 2d 481 (2007). However, "nothing in Booker or elsewhere requires the district court

to state on the record that it has explicitly considered each of the section 3553(a) factors or to discuss each of the section 3553(a) factors." *United States v. Scott*, 426 F.3d 1324,1329 (11th Cir.2005).

Finally, the court "may not presume that the [advisory] Guidelines range is reasonable." *Gall*, 552 U.S. at 50. Thus, after making an "individualized assessment" of the § 3553(a) factors based on the facts presented, *Id.*, the sentencing court is empowered to grant a variance below the advisory guidelines range, to whatever extent the court deems warranted by those facts. *Gall*, 552 U.S. at 50-51; *Livesay*, 525 F.3d at 1090; *McBride*, 511 F.3d at1297-98. If the sentencing court decides that the facts and the § 3553(a) factors warrant a downward variance, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

**A. The Offense and the Offender:**

In support of this motion, the facts as previously adopted in the plea agreement and factual proffer are undisputed. The advisory sentencing guidelines in the Presentence Investigation Report (PSIR) have a Total Offense Level of 25 which is a sentencing range between 57 to 71 months of incarceration.[1]

Mr. Polit is forty-four years old born in Hollywood, Florida. He is the middle child of his four siblings and was raised in Cooper City, spending most of his youth in Guayaquil, Ecuador. After graduating from high school in Ecuador, he attended Merrimack College and obtained a bachelor's degree in business administration.

---

[1] Although not binding on this Court, the Parties agreed in the Plea Agreement that the Total Offense Level would be 24 which is a sentencing range between 51 to 63 months of incarceration.

Mr. Polit married Necane Sarasola in 2001 and had three children with her (Fiorella [age 23]; Nathalia [age 19]; and John [age 14]).  Thirteen years later, Mr. Polit met Luis, with whom he fell in love.  Mr. Polit made the incredibly difficult decision of informing his family that he was gay.   This caused a significant strain on his relationship with his father, Carlos Polit-Faggioni.

Unlike his father, Necane, his wife, supported John during this difficult time.  Their relationship flourishes today as a blended family made up of John, his partner Luis,  Necane and her new husband, Alvaro and their children.  Necane and Alvaro welcomed their first child Matias whom John and Luis care for as their own.  All in all, their family now has four loving children, Fiorella, Nathalia , John and Matias [age 3].



At the time John made the life changing decision to come out, he was working as a financial advisor for Merrill Lynch Bank in Miami.  This change was not accepted by John's father creating a very difficult father-son relationship.  His father was ashamed and embarrassed of his son and as a result the two spoke very infrequently, particularly

throughout the time of the crimes charged. When they did speak, they spoke about other investment opportunities and the schools and restaurants John owned that were successful. Particularly, John's father was interested in investing in John's schools an investment that was supposed to be given to his siblings. During one of these discussions, his father indicated that he had money that he could lend, if John could find individuals or companies interested in loans. Mr. Polit during social encounters with friends secured three companies in need of loans: Plastiquim, Cosani and Italcom. As the Court is aware, the money used to fund the loans came from the Odebrecht bribes obtained by Carlos Polit while he was Comptroller General in Ecuador. Mr. Polit became aware of potential illegality when the loans were not funded by any company associated with his father, but by other companies he had never heard of. These companies that funded the loans (Sarawak Corporation, Select Engineering and Klienfeld Services) were shell companies set up by Odebrecht to pay bribes. Through willful blindness, Mr. Polit continued to actively participate in the laundering of bribe money that had been paid to his father. The loans for these companies were paid to companies controlled by Mr. Polit. His father indicated to John to keep his share of the monies in companies controlled by John as a deposit for the purchase of schools, that Mr. Polit owned independently, but as mentioned above, his father wanted to purchase on behalf of John's other siblings.

As the Court is aware from Carlos Polit's trial, he also received bribes from Diego Sanchez in an effort to have him influence and have Sanchez obtain an insurance contract that he had lost with Seguros Sucre. Sanchez opened accounts at Merrill Lynch managed by John. John was instructed by his father to receive funds from Sanchez. John, at the request of Mr. Sanchez, had a fictitious invoice generated upon receipt of the funds to

6

justify the transfer. These funds were also kept in companies controlled by Mr. Polit for the purpose of purchasing real estate.

In 2017, the blinders that John had on throughout the course of the entire conspiracy came off with the revelation of the recordings of his father admitting to the bribery scheme which surfaced in Ecuador and Brazil, prompting criminal charges against him and his father. While John had not been part of any meeting, negotiations or planning it was clear that he had become embroiled in something beyond control. At that time, John could not escape the certainty that his actions were criminal. As such, and unlike his father, he immediately took responsibility and once indicted, pled guilty. Over the years John was instrumental in creating numerous businesses and employing countless members of the South Florida community. Thankfully, the errors that have led Mr. Polit to his forthcoming sentence did not impact the community and those he employed. As set forth in this memorandum, John has taken the full responsibility of his actions and made every effort to satisfy the millions of dollars owed in restitution whether by selling his personal properties or by taking loans to meet any of his obligations. Mr. Polit recognizes that the damage that he has caused is not solely to others. Rather, Mr. Polit understands that he has also ruined his career as a banker and any possibilities of returning to the career he has been involved with since graduating college.

This motion should not in any way be interpreted as an attempt to minimize or gloss over the crime to which he pled guilty. However, this is an effort to explain Mr. Polit's conduct, to put it in the proper context, and to provide this Court with an understanding as to the facts and circumstances that resulted in his appearing before this Court for sentencing.

**Applicability of 2s1.1(b)(2)(A) instead of 2s1.1(b)(2)(B):**

According to the Presentence Investigation Report, the Parties agreed to the offense level should be increased by one level pursuant to 2s1.1, comment n.3(C) that when a Defendant is convicted of 18 U.S.C. 1956 when the sole object of that conspiracy was to commit an offense set forth in 18 U.S.C. 1957. The Presentence Report indicates that as Mr. Polit committed conspiracy to launder money with the sole purpose of enriching himself and a two-level increase is warranted instead of a one-level increase. This Court has the benefit, not usually present during most cases, as it sat through the trial of Carlos Polit and is familiar with the evidence as presented. There is no evidence that Mr. Polit used any of the funds that were laundered to do anything other than to violate 18 U.S.C. 1957 (Engaging in Transactions in Criminally Derived Property). After the funds were received by Venture Overseas, they were sent to Invecon and used for home improvements for the Los Pinos property (Carlos Polit Trial; Gov. Ex. 12-19; 12-20; 12-21; 12-23; 12-25). As were funds received by American Land used for the improvement and sale of the Los Pinos property (Carlos Polit Trial; Gov Ex. 12-24). As were the funds received by Venture Overseas used for the purchase of 1902 SW 22nd St. (Carlos Polit Trial; Gov Ex. 12-27). Therefore, as agreed by the parties, the offense level should be increase by one level and not two, bringing his total offense level, after acceptance of responsibility, to a level 24 representing 51-63 months in prison.

**Applicable 18 U.S.C § 3553(a) Factors:**

Undersigned counsel submits that following factors are applicable in this case and should be taken into consideration by this Court:

18 U.S.C § 3553(a)(1) states the Court shall consider "the nature and circumstances

8

of the offense and the history and characteristics of the defendant." The crime that Mr. Polit committed is serious but one which nevertheless should not be judged in the abstract. To begin with, and perhaps most importantly, Mr. Polit offense did not involve any type of violence or the use of a weapon. Certainly that is an important factor in determining whether someone deserves to be incarcerated. Second, Mr. Polit did not enter this conspiracy with the intent to commit a crime or become a criminal. He acknowledges becoming willfully blind to his actions and ignoring the truth. His actions, were nonetheless criminal and he has accepted responsibility for his role in the conspiracy.

Considering Mr. Polit' role in this offense and his unblemished criminal history, it can be said that the commission of this crime was out of his character.

18 U.S.C § 3553(a)(2)(A) states that this Court's sentence should "…reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment…" A sentence of Twenty Eight (28) months of federal incarceration followed by a period of supervised release would achieve these goals. Mr. Polit will one day return to his businesses, but he will return as a convicted felon. His conduct will not only result in him being incarcerated in prison but also to be away from his beloved family and without the ability to support them. 18 U.S.C § 3553(a)(B) also states that the sentence should provide "…deterrence to criminal conduct. The sentence we are requesting will both punish Mr. Polit while at the same time be a deterrent to others who may be contemplating engaging in the same conduct.

18 U.S.C § 3553(a)(C) provides that the sentence should "…protect the public from further crimes of the defendant." In light of the Mr. Polit's character, contrition, and cooperation with the authorities, we submit that the Court should have absolutely no

concern that he would ever commit another criminal offense. The public in the United States does not need to be protected from Mr. Polit.

The last factor that the Court should consider is 18 U.S.C § 3553(a)(6). This provision takes into account the sentences of others which were decided by this Court. His father, Carlos Polit was convicted on all counts by the Jury. He scored an offense level 34 which is 151-188 months in prison. Mr. Polit, the father, was sentenced by this court to 120 months. This Court reduced the prison time from 151 months to 120 months (31 month reduction). Juan Ribas Domench scored an offense level 25 which is 57-71 months in prison and was sentenced to 51 months and the Government requested that the court reduce the sentence by another 20 months based on his cooperation. Diego Sanchez, paid a forfeiture of $1.2 million dollars and was never indicted in exchange for his cooperation. Others involved in the conspiracy, Jose Santos, Geraldo De Sousa, and Olivio Rodrigues were also never prosecuted in the United States and never served a day in an American prison. Unlike Mr. Sanchez who only paid $1,200,000.00 and was not indicted, Mr. Polit is paying in forfeiture $16,510,000.00 and is still facing time in prison. It is not solely that Mr. Polit has agreed to the forfeiture of an amount equal to his father's full sentence, but more importantly, he is actively sought and sold all the necessary assets to ensure that the forfeiture is paid before he serves even a day of his sentence.

According to the Judiciary Sentencing Information (JSIN) platform, which is a sentencing resource for the Federal Judiciary providing sentencing data for offenders in the same or similar circumstances as Mr. Polit's sentencing guidelines during the last five fiscal years (FY2019-2023), there were 60 defendants whose primary guideline was §2S1.1, with a Final Offense Level of 24 and a Criminal History Category of I, after

10

excluding defendants who received a §5K1.1 substantial assistance departure. For the 54 defendants (90%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 39 month(s) and the median length of imprisonment imposed was 42 month(s).

Based on the above it is our respectful request that he receive a lower sentence of 28 months, representing a reduction of 23 months from the lower end of the advisory guidelines which is commensurate with the reduction that was applied to his father during his sentencing.

Another reason for a departure from the advisory sentencing guidelines is Mr. Polit's efforts to provide assistance to the government. While the government ultimately declined to file a motion for downward departure pursuant to Section 5K1.1 of the Sentencing Guidelines this decision does not take away from Mr. Polit's earnest efforts to cooperate. Section 5K1.1 provides that upon motion of the government stating that the defendant has provided substantial assistance, the Court may depart from the guidelines. In determining the appropriate reduction the Court may consider, but is not limited to, the following:

(1) The Court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and

(5) the timeliness of the defendant's assistance.

> U.S.S. . §5K1.1(a); See also *United States v. McVay*, 447 F. 3d 1348, 1354(11th Cir. 2006).

Mr. Polit was debriefed and provided truthful information about his involvement and more importantly has provided information on other targets of interest to the Government. Certainly, the timing of Mr. Polit's indictment, at the tail end of most prosecutions related to the Odebrecht scandal, impacted the usefulness of his cooperation. Nevertheless, it is Mr. Polit's sincere hope this Court will still take into account earnest effort in assisting the government.

In conclusion, this Court is faced with an important decision. However, the Court's sentence will be most important and consequential to one person, JOHN CHRISTOPHER POLIT. Too often we forget that the decisions made by the courts, the prosecution, and even a defense lawyer, can have permanent and life-changing effects on an individual. Mr. Polit appears before this Court filled with remorse and shame for what his conduct has wrought. Mr. Polit and undersigned counsel request that this Court impose the sentence that has been requested of twenty eight (28) months of incarceration or whatever lesser term this Court deems justified which would be a severe punishment from his participation in the charged crime.

Respectfully submitted,
/s/ Rey Dorta
Rey Dorta, Esq.

FL. Bar No.: 0084920
Omar Ortega, Esq.
FL. Bar No.: 0095117
Dorta & Ortega, P.A.
3860 SW 8th Street, PH
Coral Gables, Florida 33134
Tel: 305.461.5454
rdorta@dortaandortega.com
oortega@dortaandortega.com

Counsel for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed this 11th day of November 2025 and served on all parties of record via the CM/ECF system.

/s/ REY DORTA
REY DORTA, Esq.